UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80706-CIV-MARRA

ANDREW PRETKA et al.,

Plaintiffs,

vs.

KOLTER CITY PLAZA II INC.,

Defendant

_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Kolter City Plaza II Inc.'s Motion to Dismiss (DE 43).  The Court held oral argument on December 14, 2010. The Court has carefully considered the motion and the arguments of counsel and is otherwise fully advised in the premises.

I.  Background

According to the allegations of the Second Amended Complaint ("SAC"), Plaintiffs Andrew Pretka, Paul Litvak, Michele Litvak, Peter O'Connell, Harriet Dinari, Bruce Fisher, Daniel D'Loughy, Helene Bednowitz, Mindy Bednowitz, Renee Pfefferbaum, Clarence Elder and Barbara Elder (collectively, "Plaintiffs") entered into purchase and sale agreements with Defendant Kolter City Plaza II Inc.("Defendant") for condominium units at the Two City Plaza Condominium at 701 Olive Avenue, West Palm Beach, Florida between October 12, 2004 and June 7, 2005. (SAC ¶ ¶ 1, 20-28.)  The Agreements were identical in form and content, and an identical prospective form agreement was attached to the condominium documents and property report. (SAC ¶ 30; Agreements A-I, attached to DE 40.)

The sale of the units is governed by the Florida Condominium Act and Florida common law. (SAC ¶ 31.) The Florida Condominium Act ("FCA"), Chapter 718 of the Florida Statutes, mandates the procedure for the creation, sale and operation of condominiums in Florida. (SAC ¶ 33.) Among other things, Chapter 718 establishes the rights and obligations of the purchasers and condominium developers. (SAC ¶ 34.) In particular, Florida Statute § 718.202 of the FCA details the rights and obligations of developers with respect to sale and reservation deposits accepted prior to closing. (SAC ¶ 35.) Florida Statute § 718.202(3) states:

> If the contract for sale of the condominium unit so provides, the developer may withdraw escrow funds in excess of 10 percent of the purchase price from the special account required by subsection (2) when the construction of improvements has begun. He or she may use the funds in the actual construction and development of the condominium property in which the unit to be sold is located. However, no part of these funds may be used for salaries, commissions, or expenses of salespersons or for advertising purposes. A contract which permits use of the advance payments for these purposes shall include the following legend conspicuously printed or stamped in boldfaced type on the first page of the contract and immediately above the place for the signature of the buyer: ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.

(SAC ¶ 38.)

The Agreement seeks to avail itself of the right conferred upon developers by Florida Statute § 718.202(3) to withdraw escrow funds in excess of 10 per cent of the purchase price. (SAC ¶ 29; Agreement, Ex. A-I, at 5-1.) Therefore, Florida Statute § 718.202(3) requires the Agreement to contain the capitalized legend (the "Legend"). (SAC ¶ 40.) It also mandates that the Legend be contained "on the first page of the contract and immediately above the place for the signature of the buyer." (SAC ¶ 41.) The Agreement contains the Legend on the first page. (SAC ¶ 42.) The place for the signature of the buyer, however, is on the top of the second page.

(SAC ¶ 42.)  Between the Legend and the signature block is a disclosure pursuant to the Federal Interstate Land Sales Registration Program, 24 C.F.R. § 1710. (Agreement, Ex. A-I, at 5-1 and 5-2.)

The Agreement provides an estimated completion date for the Units of July 31, 2007.

(SAC ¶ 46.)  Paragraph 3a of the Agreement provides:

> The estimated date of completion of construction of the Condominium is July 31, 2007.  The Developer agrees that it will use commercially reasonable efforts to complete construction by this date, but actual completion as of this date is not guaranteed.  Under no circumstances shall the Developer be liable for any damages, costs, expenses and liabilities or inconvenience incurred by Buyers of the Units because of the failure to complete construction by July 31, 2007 regardless of the cause of the delay.

(SAC ¶ 49; Agreement, Ex. A-I, Paragraph 3A.)  Not until approximately 20 months after the estimated completion date and approximately 46 months from the latest Agreement's execution did Defendant first contend that any of the Plaintiffs' units were completed. (SAC ¶ 47.)

Based on the failure of the Agreement to contain the Legend immediately above the signature block, the SAC alleges a violation of the FCA (count one).  As a result of this violation, Plaintiffs claim that the Agreement is voidable and entitles them to a return of all sums deposited or advanced. (SAC ¶ 78.)  Count two of the SAC alleges a claim for breach of contract based on Defendant's failure to complete timely the construction of the Units, also entitling Plaintiffs to the return of their deposits. (SAC ¶ ¶ 89-90.)

Defendant moves to dismiss both counts of the SAC. With respect to the claim alleging a violation of Florida Statute § 718.202(3), Defendant states that a purchaser's right to rescind is limited by Florida Statute § 718.503 which provides that the purchaser must give written notice of the intention to rescind the Agreement within 15 days after execution of the Agreement.

3

Furthermore, Defendant contends that the Agreement complies with Florida Statute § 718.202(3) because the disclosure is immediately above the signature line, and is separated from it only by a mandatory federal disclosure. Alternatively, Defendant asserts that the Agreement substantially complies with Florida Statute § 718.202(3). With respect to the breach of contract claim, Defendant argues that the parties only agreed to an estimated completion date and expressly agreed that Defendant would not liable for completion delays. Defendant finally argues that Plaintiff cannot state a claim for breach of contract because time was not of the essence.

In response, Plaintiffs contend that the 15 day period to rescind found in Florida Statute § 718.503 does not apply to the disclosure in Florida Statute § 718.202. Instead, Plaintiffs state that purchasers are protected by Florida Statute § 718.202 up until the time of closing. Regarding the breach of contract claim, Plaintiffs argue that Florida law implies a reasonable time when a contract does not expressly fix the time for performance, and the Agreement contains an explicit commitment to use commercially reasonable efforts to complete construction by the estimated completion date.

II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b) (6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### III.  Discussion

#### A.  Florida Condominium Act

Florida Statute § 718.202 is entitled "Sales or reservation deposits prior to closing."  The purpose of this provision is "to protect purchasers under preconstruction condominium contracts from loss of their deposits should the developer fail to perform its contractual obligations." First Sarasota Svc. Corp. v. Miller, 450 So. 2d 875, 878 (Fla. Dist. Ct. App. 1984). Specifically, this provision provides in "precise and easily understood terms a condominium developer's obligations with reference to receiving and handling condominium parcel purchase funds." Barrack v. State, 462 So. 2d 1196, 1197 (Fla. Dist. Ct. App. 1985).

Section 718.202(1) requires developers who enter into preconstruction condominium contracts to pay into "an escrow account all payments up to 10 percent of the sale price received by the developer from the buyer towards the sale price." Florida Statute § 718.202(1).  All

payments in excess of that 10 percent of the sale price and which have been received prior to completion of construction by the developer from the buyer must be held in a special escrow account. Florida Statute § 718.202(2). These funds may not be used by the developer unless they are used for "the actual construction and development of the condominium property in which the unit to be sold is located" or for a refund to the buyer. Florida Statute § 718.202(2) and (3). In order for these advance funds to be used for construction purposes, the contract must include "the following legend conspicuously printed or stamped in boldfaced type on the first page of the contract and immediately above the place for the signature of the buyer: ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER." Florida Statute § 718.202(3). "The failure to comply with the provisions of this section renders the contract voidable by the buyer and, if voided, all sums deposited or advanced under the contract shall be refunded . . . ." Florida Statute § 718.202(5).

The boldface disclosure required by Florida Statute § 718.202(3) puts preconstruction condominium purchasers on notice that payments made in excess of 10 percent of the purchase price may be used by the developer for construction purposes.[1] Without this disclosure, purchasers would be unaware of the risk that funds could be depleted by the developer and used

---

[1] In interpreting this statutory provision, the Court observes that "starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Prod. Safety Comm. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); see also Harry v. Marchant, 291 F.3d 767, 770 (11th Cir. 2002) (courts must first examine "the text of the statute to determine whether its meaning is clear").

for construction purposes. Indeed, once the funds are used for construction, the purchaser will have greater difficulty in receiving his or her deposit upon a breach of contract by the developer. Thus, the statute requires that the purchaser be placed on explicit notice of such a risk. In the absence of the required disclosure, a purchaser with a valid claim against a developer that would entitle the purchaser to a return of his or her deposit would not be aware of the risk that the full amount of the deposit may not be available to recover. The need to obtain a return of the deposit upon a breach by the developer may not arise until later in the contractual relationship. For these reasons, it makes little sense to require the purchaser, for whose protection the provision is designed, to have to assert a breach of this statutory requirement within 15 days of the execution of the contract. Rather, that remedy should be available to the purchaser up to the closing, after which time there ordinarily would be no further need for the developer to return the purchaser's deposit.[2] Consistent with this time frame are the various provisions of section 718.202 which refer to the performance obligations of the developer up until or at the time of closing. See, e.g., Florida Statute § § 718.202(1)(c)("interest shall be paid to the developer at the closing of the transaction"); 718.202(1)(d) ("[funds] may be disbursed to the developer by the escrow agent at the closing of the transaction"); 718.202(2) ("[payments] may not be used by the developer prior to closing the transaction").

      Hence, the Court rejects Defendant's contention that Plaintiffs' claims are barred because they did not give written notice of an intention to rescind the agreements within 15 days after

---

[2] In cases where the required disclosure is either missing or inadequate, a purchaser might not be aware of the lack of disclosure until after closing but, at that point, the purchaser would have taken possession of the condominium unit and no longer needs the protection provided by this statute.

execution of the agreement.  (Mot. at 5.)  In making this argument, Defendant relies upon Florida Statute 718.503(1)(a)[3] and Zambrano v. Indian Creek Holding, LLC, No. 09-20453-CIV, 2009 WL 1585980 (S.D. Fla. June 4, 2009).   The 15-day right to void has been described as "a cooling off period to protect the public in general from high pressure condominium sales situations."  Asbury Arms Development Corp. v. Florida Dept. of Business, 456 So. 2d 1291, 1293 (Fla. Dist. Ct. App. 1984).  "It allows the purchaser to review or check out the contents of

---

[3] This provision provides as follows:

1) Developer disclosure.--

(a) Contents of contracts.--Any contract for the sale of a residential unit or a lease thereof for an unexpired term of more than 5 years shall:

1. Contain the following legend in conspicuous type: THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER, AND RECEIPT BY BUYER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM OR HER BY THE DEVELOPER UNDER SECTION 718.503, FLORIDA STATUTES. THIS AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 15 DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE ITEMS REQUIRED. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING. FIGURES CONTAINED IN ANY BUDGET DELIVERED TO THE BUYER PREPARED IN ACCORDANCE WITH THE CONDOMINIUM ACT ARE ESTIMATES ONLY AND REPRESENT AN APPROXIMATION OF FUTURE EXPENSES BASED ON FACTS AND CIRCUMSTANCES EXISTING AT THE TIME OF THE PREPARATION OF THE BUDGET BY THE DEVELOPER. ACTUAL COSTS OF SUCH ITEMS MAY EXCEED THE ESTIMATED COSTS. SUCH CHANGES IN COST DO NOT CONSTITUTE MATERIAL ADVERSE CHANGES IN THE OFFERING.

the prospectus or offering statement required by section 718.504, to seek the advice of an attorney, or simply to reconsider the decision." Id.  A cooling off period would not necessarily place a purchaser on notice about the absence of the section 718.202(3) disclosure.  A missing disclosure would likely only be discovered upon the occurrence of an event that triggered a need for the return of the deposit, which, in all likelihood, would not occur during a cooling off period.[4]  Therefore, the Court will not follow Zambrano's application of the 15 day period in section 718.503 to section 718.202(3).  In doing so, the Court rejects Zambrano's finding that because section 718.202(3) does not state when the purchaser's right to void expires, it is necessary to look at "the general right to void a sales contract provided in section 718.503 of that Act." Zambrano, 2009 WL 1585980, at * 2.  Instead, the Court finds that sections 718.202(3) and 718.503 address differing concerns, protect purchasers in different ways and therefore have different time frames for enforcement.

Next, the Court turns to Defendant's argument that the agreement complies with section 718.202(3) because the disclosure is separated from the signature line only by a mandatory federal disclosure.  (Mot. at 7.)  Defendant states that the federal disclosure must be placed "on the face or signature page above all signatures[.]" 24 C.F.R. § 1710.209(f)(3)(i).  Therefore, according to Defendant, the Supremacy Clause of the United States Constitution requires that the federal disclosure be placed between the state disclosure and the signature line.  The Court

---

[4] The Court recognizes that the SAC does not allege that the disclosure was absent, but that the disclosure was not in the proper place.  That fact, however, does not alter the Court's analysis regarding the purpose behind this statutory provision.  In determining whether the 15 day time frame is controlling, the Court must analyze the statutory scheme on the assumption that the disclosure was not included in the contract. The applicable time period to assert a violation of the statutory disclosure requirement cannot be different where the disclosure is omitted as opposed to where the disclosure is misplaced.

9

rejects this argument. First, the federal regulation cited by Defendant only requires that the federal disclosure be on the "signature page above all signatures," and not that the federal disclosure be immediately above the signatures. Nor is there anything in the federal regulation that obviates the need to comply with the state statutory requirement that the state disclosure be placed immediately above the place for the signature of the buyer.

Defendant alternatively argues that the agreement substantially complies with section 718.202(3). In making this argument, Defendant relies on Florida Statutes § 718.505 which provides:

> If a developer, in good faith, has attempted to comply with the requirements of this part, and if, in fact, he or she has substantially complied with the disclosure requirements of this chapter, nonmaterial errors or omissions in the disclosure materials shall not be actionable.

Fla. Stat. § 718.505. Plaintiff disagrees, contending that section 718.505 only applies to Part V of the Condominium Act, and not Part II.[5] The Court rejects Plaintiff's reading of this statute. Section 718.505 clearly provides that it allows for substantial compliance with "the disclosure requirements of *this chapter*." Id. (emphasis added.)

That stated, the Court is not prepared to conclude, as a matter of law, that Defendant substantially complied with the disclosure requirements. Here, the developer was required to provide a legend that was (1) conspicuously printed or stamped in boldfaced type (2) on the first page of the contract and (3) immediately above the place for the signature of the buyer. Florida

---

[5] Plaintiff also relies on Double AA Intern. Inv. Group, Inc. v. Swire Pacific Holdings, Inc., No. 08-23444-CIV, 2010 WL 1258086 (S.D. Fla. Mar. 30, 2010). That case is distinguishable. Double AA did not address the legend at issue here, but the requirements pertaining to escrow accounts. Because Double AA did not deal with disclosure requirements, the opinion also did not address section 718.505.

Statute § 718.202(3). A trier of fact may need to weigh each of these factors separately or in relationship to each other in determining whether a developer substantially complied with section 718.202(3). In performing a substantial compliance analysis, a trier of fact could reasonably determine that each factor should be given different weight, not equal weight. Hence, in this case, a trier of fact could conclude that having the disclosure in boldface type, regardless of its location, substantially outweighs the need to have the disclosure on the first page or immediately above the signature block. Under those circumstances, a trier of fact could conclude that a developer who puts the disclosure in boldface type has substantially complied. A trier of fact could also reasonably conclude that the need to have the disclosure immediately above the signature block is the most important factor and the failure to meet that requirement does not constitute substantial compliance. Other variations of this calculus could be deemed warranted by a fact finder resulting in varying results. For these reasons, the Court cannot conclude, at the motion to dismiss stage, whether Defendant substantially complied with the section 718.202(3) as a matter of law.[6]

Finally, the Court agrees with Defendant that Plaintiffs must allege prejudice to state a claim under section 718.202(3). Cf. Beach Place Joint Venture v. Beach Place Condo. Assoc.,

---

[6] Defendant urges this Court to consider a Letter from the Division of Florida Land Sales, Condominiums, and Mobile Homes which accepted the purchase contract at issue here with respect to the filing and disclosure of Chapter 718. (Mot. at 9; Ex. A, DE 45-1.) It is, however, unclear what acceptance by this administrative agency means, and more importantly, what legal effect, if any, it has on the issues raised in this case. Therefore, the Court will not consider the letter at the motion to dismiss stage. See St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir.2002) (the motion to dismiss stage, the scope of the Court's review is limited to the four corners of the complaint); cf. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (a court may consider a document attached to a motion to dismiss if it is central to the plaintiff's claim and undisputed).

458 So. 2d 439, 441 (Fla. Dist. Ct. App. 1984) ("Appellant urges that a good faith attempt was made to comply with the Condominium Act, chapter 718, Florida Statutes, and that the recording error should not be used to provide a windfall to the condominium owners. We agree."); Bruce v. O'Neill, 445 So. 2d 379 (Fla. Dist. Ct. App. 1984) ("we are doubtful as to the cause of action for statutory rescission [under section 718.506] where there is absolutely no demonstration that the plaintiff/purchaser was even slightly prejudiced by the technical statutory noncompliance of the seller.")  The SAC does not allege that Plaintiffs were misled or prejudiced by the disclosure in any way.  To hold otherwise would mean that Plaintiffs could have actually seen and read the disclosure, but would be entitled to a recovery simply because the signature block was misplaced.  The Court rejects such a interpretation of the statute. The Court will grant Plaintiffs leave to amend to allege the existence of prejudice, if they can do so in good faith and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure.

B.  Breach of Contract

Defendant seeks dismissal of the breach of contract claim on the basis that the parties only agreed to an estimated completion date and expressly agreed that Defendant would not be liable for completion delays.  Moreover, Defendant claims that because time was not of the essence, there can be no claim for breach of contract.  (Mot. at 11-13.)  Plaintiffs respond that when a contract does not expressly fix the time for performance of its terms, the law implies a reasonable time.  Therefore, Plaintiffs claim the condominium units needed to be completed within a commercially reasonable time. (Resp. at 16-17.)

Paragraph 3a of the Agreement provides:

The estimated date of completion of construction of the Condominium is July 31, 2007. The

12

> Developer agrees that it will use commercially reasonable efforts to complete construction by this date, but actual completion as of this date is not guaranteed. Under no circumstances shall the Developer be liable for any damages, costs, expenses and liabilities or inconvenience incurred by Buyers of the Units because of the failure to complete construction by July 31, 2007 regardless of the cause of the delay.

(SAC ¶ 49; Agreement, Ex. A-I, Paragraphs 3A.)

The Agreement only provides an estimated date for completion of the condominium. No set time for completion is established by the Agreement. Nonetheless, Florida law provides that when a contract does not expressly fix the time for performance of its terms, the law will imply a reasonable time. Denson v. Stack, 997 F.2d 1356, 1361 (11th Cir. 1993); Hammond v. DSY Developers, LLC, 951 So. 2d 985, 988 (Fla. Dist. Ct. App. 2007); De Cespedes v. Bolanos, 711 So. 2d 216, 218 (Fla. Dist. Ct. App. 1998). Moreover, in the instant case, the Agreement provides that Defendant will use "commercially reasonable efforts to complete construction." Whether Defendant used commercially reasonable efforts, however, is a factual question that cannot be decided at the motion to dismiss stage.[7]

---

[7] The Court rejects Defendant's reliance on Santidrian v. Landmark Custom Ranches, Inc., No. 08-60791-CIV, 2008 WL 4571820 (S.D. Fla. Oct. 14, 2008). There, the plaintiffs alleged breach of contract based on the failure of the developer to complete construction by the estimated completion date. That contract also provided that while the estimated completion date could change for any reason, substantial completion must occur within two years. The plaintiffs brought suit prior to the expiration of the two year period. The Santidrian court held that no construction of the factual allegations could support a breach of contract claim. Unlike here, those plaintiffs brought suit prior to the expiration of the two year period. Defendant also relies on two other cases with contractual terms different than here; one of those contracts allowed for an extension of the closing date for up to two years and the other provided for an estimated completion date with a two year time limit as to when the construction must be completed. See Am. Somax Ventures v. Touma, 547 So. 2d 1266, 1268 (Fla. Dist. Ct. App. 1989); Mihilyi v. Shelby Homes at Lantana, LC, No.08-80057-CIV, 2008 WL 2520481, at * 3 (S.D. Fla. June 20, 2008). None of the contracts in these cases had an express contractual requirement that the developer use "commercially reasonable efforts" to complete construction by an estimated completed date. Thus, these cases are of limited value in resolving the issues in this case.

Lastly, there is also a factual question as to whether the promise made to use commercially reasonable efforts to complete construction by the stated date is illusory when read in conjunction with the limitation of liability for failure to complete construction timely. See Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1311 (11th Cir. 1998) (if "one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor then that promise may be characterized as an 'illusory' promise") (interpreting Florida law); Office Pavilion South Florida, Inc. v. ASAL Prods., Inc., 849 So. 2d 367, 370 (Fla. Dist. Ct. App. 2003) ("In a contract where the parties exchange promises of performance, if either of those promises is illusory or unenforceable then there is no consideration for the other promise.") quoting Allington Towers N., Inc. v. Rubin, 400 So. 2d 86, 87 (Fla. Dist. Ct. App. 1981) (internal quotation marks omitted).

For these reasons, the Court denies the motion to dismiss the breach of contract claim.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Kolter City Plaza II Inc.'s Motion to Dismiss (DE 43) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is granted leave to amend the Complaint **within 14 days of the date of entry of this Order**, consistent with its directives.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 7th day of March, 2011.

_____
KENNETH A. MARRA
United States District Judge