UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80706-CIV-MARRA

ANDREW PRETKA et al.,

Plaintiffs,

vs.

KOLTER CITY PLAZA II INC.,

Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Kolter City Plaza II Inc.'s Motion for Summary Judgment (DE 131). The motion is fully briefed and ripe for review. The Court held oral argument on the motion. (DE 164.) The Court has carefully considered the Motion and the arguments of the parties and is otherwise fully advised in the premises.

I.  Background

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in a light most favorable to the non-moving party, for the purpose of this motion, are as follows:

In 2004 and 2005, Plaintiffs entered into agreements (the "Purchase Agreements") to purchase condominiums in a West Palm Beach high-rise condominium, developed by Defendant Kolter City Plaza II, Inc. ("Defendant"), named Two City Plaza. (Third Am. Compl. ¶¶ 20-28, DE 67.)  Before signing the Agreements, Plaintiffs received a Property Report providing:

> Construction related activities are anticipated to commence around October 2004 and it is estimated that construction will be completed by July 31, 2007. Although this is an estimated full completion date, there are no firmly established dates for completing the

>construction and, therefore, there are no provisions for penalties relative to missed construction dates.

(Edwin F. Jahn III Decl. ¶ 5, DE 132-1; Property Report, Ex. 1-A, DE 132-1.)  The Agreement provided for an estimated completed date for the units of July 31, 2007:

>The estimated date of completion of construction of Condominium is July 31, 2007.  The Developer agrees that it will use commercially reasonable efforts to complete construction by this date, but actual completion as of this date is not guaranteed. Under no circumstances shall the Developer be liable for any damages, costs, expenses and liabilities or inconvenience incurred by Buyers of the Units because of the failure to complete construction by July 31, 2007 regardless of the cause of the delay.

(Property Agreements ¶ 3A, Ex. A-I, DE 67.)

In May and August 2006, after several hurricanes, Defendant sent Plaintiffs letters that the estimated completion date for Two City Plaza had been changed to late summer 2008. (Jahn Decl. ¶¶ 6-8, Exs. 1-B, 1-C,1-D; Harriet Dinari Dep. 55, DE 132-2; Bruce Fisher Dep. 56-57, DE 132-3; Daniel D'Loughy Dep. 73-74, DE 132-4; Peter O'Connell Dep. 84-85, DE 132-5.)  Next, in September 2006, Defendant sent Plaintiffs a notice formally amending the Purchase Agreement and condominium documents (the "September 2006 Amendment").  (Jahn Decl. ¶ 10, Ex. 1-D; O'Connell Dep. at 94; Andrew Pretka Dep. 75-76, DE 132-6.)

The September 2006 Amendment stated that the new "Estimated Completion Date" was July 31, 2008 (the "Amended Estimated Completion Date"), but that completion was not guaranteed by that date. The September 2006 Amendment also provided the "State Required Notification" that a purchaser "shall have 15 days to notify the developer of the buyer's intention to cancel the purchase contract after the date of receipt of any amendment which materially alters or modifies the offering in a manner which is adverse to the purchaser."  (Sept. 2006 Amendment,

attached to Jahn Decl. at Ex. 1-D.) Plaintiff O'Connell sent a letter purporting to rescind the contract, but the letter was qualified by several conditions, and, after sending the letter, he continued to perform under his Purchase Agreement. (O'Connell Dep. at 96-97, 99-100, 113-114, 115-116.)

Also, Plaintiffs never notified Defendant in writing, before this lawsuit was filed, that it was in breach of the Purchase Agreements,[1] nor did Plaintiffs demand that Defendant complete construction by some earlier date. (Dinari Dep. 66-67; Fisher Dep. 57, 58, 66; D'Loughy Dep. 76, 79, 83-84; Pretka Dep. 71-73, 76-78, 85; Michele Litvak Dep. 75-76, DE 132-7; Paul Litvak Dep. 60-61, 67, 84, DE 132-8; Clarence Elder Dep. 99, 115, DE 132-9; Renee Pfefferbaum Dep. 70-73, 75-76, DE 132-10; Helene Bednowitz Dep. 59, DE 132-11; Mindy Bednowitz Dep. 46-47, DE 132-12.) Moreover, after Plaintiffs received notice of the change of the completion date and of their option to rescind within fifteen (15) days, they took the following actions consistent with the expression of an intention to continue to perform under the contracts. For example, Ms. Dinari made additional deposit payments and agreed to enter a "flip program," under which Defendant would attempt to re-sell her unit. (Dinari Dep. 54, 59.) Mr. Elder negotiated a new deposit payment schedule, made additional deposit payments and listed the units he contracted to purchase for resale. (Elder Dep. 106-108, 116-118, 121.) Mr. Fisher and the Bednowitz sisters selected carpet, tile and cabinet finishes for their units, and delivered checks to Defendant to pay for upgrades. (Fisher Dep. 61-62; H. Bednowitz Dep. 52-53; M. Bednowitz Dep. 46-47.) Mr. O'Connell obtained an appraisal on his unit and proceeded with his mortgage application. (O'Connell Dep. 99, 113-16.) Ms. Pfefferbaum chose upgraded finishes, requested a specific parking spot, and asked Defendant to

---

[1] Paragraph 15 of the purchase agreement states that Plaintiffs must notify Defendant within 20 days of any purported default to allow Seller to cure the purported default. (Purchase Agreement ¶ 15.)

delay closing so that she could attend to matters in New York. (Pfefferbaum Dep. 62, 71-73, 75.)

On August 8, 2008, Plaintiffs' units were finished and had been issued a conditional certificate of occupancy. (Certificate of Occupancy, Ex. 1-E, attached to Jahn Decl.) In December of 2008, Mr. D'Loughy renegotiated his agreement, purchasing a larger unit, with a second parking space and an upgraded storage unit, at a lower price. As part of that transaction, Mr. D'Loughy entered a termination agreement, which transferred his existing deposit to a new unit and signed a release. (D'Loughy Dep. 90, 98-99, 104, 108, 199-120; Release, Ex. 54-56, attached to D'Loughy Dep.)

Plaintiffs filed suit against Defendant on April 9, 2009, when the housing market was in decline. (April 9, 2009 Compl., DE 1; Fisher Dep. 81, D'Loughy Dep. 79; Pretka Dep. 93-94; M. Litvak Dep. 93; P. Litvak Dep. 86; Elder Dep. 147; H. Bednowitz Dep. 64; M. Bednowitz Dep. 50.)

In moving for summary judgment, Defendant contends that Plaintiffs cannot prevail on their breach of contract claim because they: (1) failed to give notice of an intent to rescind when they were notified of a change in the estimated completion date; (2) failed to demand completion or give notice of default and an opportunity to cure and (3) unreasonably delayed filing suit and continued to act in furtherance of their purchase agreements.

Plaintiffs respond that because Defendant breached the contracts in 2005, they were discharged of their obligation to perform under the contracts. Additionally, Plaintiffs assert that they did not unreasonably delay bringing the instant suit.

II.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

4

Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is

merely colorable, or is not significantly probative, then summary judgment may be granted."

Anderson, 477 U.S. 242, 249-50.

III. Discussion

The Court begins its analysis by highlighting the various statutory and administrative bases underpinning this case.

Florida Statute § 718.504 provides in relevant part:

*Every developer of a residential condominium* which contains more than 20 residential units, or which is part of a group of residential condominiums which will be served by property to be used in common by unit owners of more than 20 residential units, *shall prepare a prospectus or offering circular* and file it with the Division of Florida Condominiums, Timeshares, and Mobile Homes prior to entering into an enforceable contract of purchase and sale of any unit or lease of a unit for more than 5 years and shall furnish a copy of the prospectus or offering circular to each buyer. . . . *The prospectus or offering circular must contain the following information:*
. . .

4) Beginning on the first page of the text (not including the summary and index), a description of the condominium, including, but not limited to, the following information:
. . .

(b) A description of the condominium property, including, without limitation:
. . .

3. *The estimated latest date of completion of constructing, finishing, and equipping. In lieu of a date, the description shall include a statement that the estimated date of completion of the condominium is in the purchase agreement and a reference to the article or paragraph containing that information.*

Florida Statute § 718.504. (emphasis added)

Florida Statute § 718.503 provides in relevant part:

(1) Developer disclosure.--

(a) Contents of contracts.--Any contract for the sale of a residential unit or a lease thereof for an unexpired term of more than 5 years shall:

6

>1. Contain the following legend in conspicuous type: THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER, AND RECEIPT BY BUYER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM OR HER BY THE DEVELOPER UNDER SECTION 718.503, FLORIDA STATUTES. *THIS AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER.* ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 15 DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE ITEMS REQUIRED. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING. FIGURES CONTAINED IN ANY BUDGET DELIVERED TO THE BUYER PREPARED IN ACCORDANCE WITH THE CONDOMINIUM ACT ARE ESTIMATES ONLY AND REPRESENT AN APPROXIMATION OF FUTURE EXPENSES BASED ON FACTS AND CIRCUMSTANCES EXISTING AT THE TIME OF THE PREPARATION OF THE BUDGET BY THE DEVELOPER. ACTUAL COSTS OF SUCH ITEMS MAY EXCEED THE ESTIMATED COSTS. SUCH CHANGES IN COST DO NOT CONSTITUTE MATERIAL ADVERSE CHANGES IN THE OFFERING.

Florida Statute § 718.503. (emphasis added)

>The Florida Administrative Code Rule 61B-18.001 states in part:
>
>(3) At the time amendments are delivered to purchasers or lessees, pursuant to Rule 61B-17.006, F.A.C., *the developer shall provide to those who have not closed* a written statement that if any of the above-referenced amendments materially alter or modify the offering in a manner which is adverse to the purchaser, the purchaser or lessee shall have a 15-day voidability period.

Florida Administrative Code Rule 61B-18.001. (emphasis added)

Under section 718.504(4)(b)(3), a developer must include the estimated latest date of completion in the prospectus or offering circular. As an alternative to providing the estimated closing date in the offering documents, the developer may provide the information in the contract, so long as in the offering material reference is made to its location in the contract. Hence, contrary

7

to Plaintiffs' assertions, the estimated closing date is part of the prospectus or offering circular, either expressly or by reference.

It is also clear that the condominium statute gives the developer the ability to amend or modify the offering in a materially adverse way to the purchaser. Since the developer has the ability to modify or change the offering, and since the estimated closing date is part of the prospectus or offering circular, it necessarily follows that the developer can materially modify or change the estimated closing, subject to the buyer's right to rescind within fifteen days after the buyer receives notice of the change. It is also clear that the developer has the right to amend or modify the offering to buyers with executed contracts, since only a contractually bound purchaser would need a right to rescind. See Florida Administrative Code Rule 61B-18.001 (adverse amendments are to be delivered to "purchasers . . . who have not closed"). Thus, the Court rejects Plaintiffs' contention that a change in the completion date cannot apply to executed contracts.[2]

Here, there is no dispute that Plaintiffs received the September 2006 Amendment, that the Amendment notified them of a material change to the estimated completion date, and that they never gave any notice of an intent to rescind. Thus, summary judgment can be granted for Defendant on this basis alone. However, there are additional grounds to grant summary judgment for Defendant.

---

[2] The cases cited by Plaintiffs in support (Resp. at 11 n.4) do not state that this statutory provision only applies to changes to the offering circular, and not to the purchase agreements. See McGuinness v. Prospect Aragon, LLC, 981 So. 2d 496, 499 (Fla. Dist. Ct. App. 2008) (contract executed for benefit of buyers did not start anew the 15 day right to cancel period because the change benefitted purchaser and there was a specific agreement that it would not restart the rescission period). Furthermore, the Court rejects Plaintiffs' assertion that the question of whether they were required and failed to rescind their purchase agreements is a factual question that cannot be resolved on summary judgment. While the Court was not able to resolve that question at the motion to dismiss stage (DE 76), the fully developed record now allows the Court to make this determination as a matter of law.

There is no dispute that Plaintiffs never put Defendant on notice that they considered Defendant to be in breach either when Defendant changed the estimated date of completion or when the estimated date of completion passed.[3]  Plaintiffs claim that Defendant breached the purchase agreement as far back as 2005 by failing to use commercially reasonable efforts to complete construction.  Hence, Plaintiffs assert they were excused from further contractual performance. Even assuming Defendant failed to use commercially reasonable efforts to complete the project timely, the purchase agreement required Plaintiffs to notify Defendant within 20 days of any purported default to allow Seller to cure the purported default.  It is undisputed Plaintiffs failed to do so. (Purchase Agreement ¶ 15.) See Henry v. Ecker, 415 So. 2d 137, 140 (Fla. Dist. Ct. App. 1982) ("When a contract for the sale and purchase of land does not make time of the essence as it relates to closing, a party can breach that contract only by refusing to perform after demand that a closing take place at a reasonable time and place.")

Likewise, it is undisputed that Plaintiffs' actions (i.e., selecting finishes for their units, negotiating new deposit payment schedules, and making additional deposit payments) demonstrated that they expected Defendant to perform its end of the bargain.  See Acosta v. District Bd. of Trustees of Miami-Dad Comm. College, 905 So. 2d 226, 229 ("Where a party fails to declare a breach of contract, and continues to perform under the contract after learning of the breach, it may be deemed to have acquiesced in an alteration of the terms of the contract, thereby barring its enforcement."); see also De Huy v. Osborne, 118 So. 161, 163 (1928) (purchasers have the duty to "act without unreasonable delay . . . particularly if while the purchaser delays there ensures a

---

[3] Thus, Plaintiffs' argument that its demand would have been futile is unpersuasive since, at the very least, Plaintiffs could have put Defendant on notice once the original estimated date of completion passed.

substantial change in the status or value of the property.") Plaintiffs cannot fail to notify Defendant of a material breach of the contract, induce Defendant to continue to perform under the contract, have Defendant compete its performance under the contract and then assert the prior breach as a basis to excuse their own performance.

Finally, the Court concludes, as a matter of law, that Defendant substantially complied with the purchase agreement when it obtained the temporary certificate of occupancy eight days after the new estimated completion date.[4] An eight day delay in competing the project, as a matter of law, is not a material breach of the contract.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant's Motion for Summary Judgment (DE 131) is **GRANTED**.

2) The Court will separately issue judgment for Defendant.

3) The Clerk shall close this case.

4) All pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of March, 2013.

_____
KENNETH A. MARRA
United States District Judge

---

[4] To the extent Plaintiffs suggest that the Court should look to when Defendant obtained the final certificate of occupancy, and not the temporary certificate, the Court rejects that argument. See Rosenstein v. Edge Investors, L.P., No. 07–80903, 2009 WL 903806, at * 8 (S.D. Fla. Mar. 30, 2009).